One ground on which the motion for new trial is based is, that the instruction given to the jury assumes the *Page 247 
existence of the nuisance alleged, and so withdraws from the jury the question of fact, if there were a nuisance committed? We have looked through the charge to the jury as reported, and noticed the language to which we are referred by the motion, as giving to the charge the character which the motion ascribes to it. If the passages referred to constituted the whole substance of the charge, the instructions might be open to the objection made against them. But taking these passages in connection with the other portions, we do not perceive that the fact of nuisance is any further assumed or implied than was reasonable and proper for the purpose of instructing the jury upon the legal point arising in the case, and the question of fact is expressly submitted to the jury, whether the stable, by its use thus created a nuisance to the dwelling house occupied by the plaintiff? and the further question, if the use, creating such nuisance, were the use authorized and contemplated by the lessor, so that he (the lessor) may be said to have caused the use and the nuisance? These are stated to the jury as questions for their determination, and as necessary to determine the liability of the defendant. The charge proceeds to state the different modes in which this use operated to the injury of the plaintiff's dwelling, as alleged in the declaration, by smells, by noises, and, thirdly, by concentrating rats upon the plaintiff's premises; and the jury are directed that it is for them to determine whether the stable did visit that nuisance upon the plaintiff's dwelling house, in either of these modes. It cannot properly be said that, taking these directions along with us, the question of fact whether there was a nuisance, was withdrawn from the jury, when they were repeatedly told that it was a question for them.
The charge to the jury is objected to on another ground — that it does not define correctly what constitutes a nuisance at common law. Upon this point, we are referred, for a correct definition of a nuisance, to 2 Selwyn, Nisi Prius, 299; Stephens' Nisi Prius, pp. 2362, 2363. Selwyn, says, "It may be sufficient to observe, that the erection of anything offensive so near to the house of another as to render it useless and unfit for habitation — as a swine-stye, lime-kiln, privy, smith's forge or the like — is *Page 248 
actionable." Stephens, p. 2362, uses the same language, referring to the same authorities cited in the text of Selwyn; but he refers also to the case of Rex v. White, 1 Burr. 337, as an authority which held, that "if a person keep his hogs or other noisome animals so near the house of another that the stench renders the enjoyment of life and property uncomfortable, it is an injurious nuisance, as it tends to deprive him of the use and benefit of his house." Greenleaf, vol. 2, § 466, says, "nuisances to dwelling houses are all acts done by another, from without, which render the enjoyment of life within the house uncomfortable, whether by infecting the air with noisome smells, or with gases injurious to health, or by the exercise of a trade by machinery, which produces continued noises in the adjoining tenement." In Fish v. Dodge, 4 Denio, 311, the court says, "it is not necessary, to justify an action, that the plaintiff should be driven from his dwelling. It is enough that the enjoyment of life or property is rendered uncomfortable." Hilliard on Torts, 639, lays down the same rule, that any injury to land or houses, which renders them useless or uncomfortable for habitation, is a nuisance, and that offensive odors need not be unwholesome if they render life uncomfortable.
The question in this regard, which the jury were to determine, was expressly stated to them to be, whether the erection of the stable and the keeping it for the use for which it was tenanted, created such smells and produced such noises as to render the house uncomfortable as a dwelling house and unfitted it for the proper purposes for which it was designed; and they were directed, that if it created noises and bad smells to the degree of rendering the house unpatentable and uncomfortable, loaded it with vermin in that degree which has been described, they would say it was a nuisance. If these smells and noises were so great as to render life disagreeable to the extent set forth in the declaration, the plaintiff might recover damages for a nuisance.
It is difficult to see how the instructions here materially differ from the law as laid down in the books above referred to. The instructions are, that the noises and the smells, in order to become a nuisance, must create an annoyance to such an extent as to *Page 249 
render life uncomfortable, or to render the house uncomfortable as a dwelling house and unfitted for the proper purposes for which it was designed. The rules thus referred to hold, that it is not necessary that the house should be rendered useless in order to maintain an action, but that it is quite sufficient that the injury should be such as to render the enjoyment of life there uncomfortable. We think, therefore, that for all the purposes of this case, the charge is not open to the objection that it does not sufficiently or correctly define a nuisance at common law.
Another ground for a new trial is, that the verdict is against the weight of the evidence, as it is against the admissions of the plaintiff that the stable was properly built, that it was properly kept, and in a location as fit as any in that part of the city.
These admissions, the defendant claims, ought to be sufficient to give him a verdict, and are inconsistent with a verdict for the plaintiff, and are impliedly an admission that there was no nuisance. It has been held, in other cases, that a stable in a town is not necessarily and per se a nuisance; yet, if it is so built or so used as that it destroys the comfort of persons owning and occupying adjoining premises, creating such an annoyance as to render life uncomfortable, then it is none the less a nuisance, that it is well kept, carefully built, and as favorably located as the town will admit. The question still is, does it in fact render life uncomfortable? The admissions imply no more than that if care in building and proper careful keeping would have prevented the injurious effects complained of, they would not have resulted from the use of this stable. But the claim of the plaintiff is, that they were insufficient to prevent it, and the question was stated, did this stable injuriously affect the plaintiff's dwelling to the extent alleged?
The plaintiff could claim damages only for the injury to the dwelling house occupied by himself. The attention of the jury was directed to this point alone. It was the actual damages only that the plaintiff had a right to claim. The statute expressly excluded all damages for any alleged outrage to the feelings of *Page 250 
the plaintiff, as it does any vindictive damages — damages given by way of punishment for any willful injury. There is no allegation of any outrage to the feelings of the plaintiff, and it was expressly admitted, that the injury caused by the stable was not willfully inflicted, and that there was no malicious motive actuating the defendant.
Now, it is claimed in the argument, that if vindictive damages are excluded, and no recovery can be had for alleged outrage to the feelings of the party, there is nothing remaining for which damages can be awarded, save for some physical injury to the dwelling, that there can be no recovery for any personal inconvenience or annoyance. In other words, the claim is, that every personal annoyance or inconvenience, is included and comprehended in the term outrage to the feelings, and that life cannot be made uncomfortable by means of noisome smells or by corrupt and impure air filling the dwelling place, without an outrage to the feelings of the owner, within the meaning of this statute. The term outrage implies something more than mere inconvenience or annoyance or injury. It implies excess, violence, as well as injury, — violence and wrong, and that intended and designed; and when applied to the feelings, it implies not mere physical pain, but mental.
When the wrong is done under circumstances of indignity or contumely and consequent public disgrace, or other circumstances calculated to produce in the party mental suffering, the circumstances may ordinarily be considered by a jury in estimating damages against the original wrong-doer; but in a suit against the representative of such wrong-doer, they are by the statute excluded. No evidence of this kind was offered in this case. On the contrary, it was expressly admitted that the wrong-doer was actuated by no malicious or improper motive, but was simply exercising what he deemed to be his right, with no design to injure his neighbor.
The exclusion of this evidence would not exclude from the consideration of the jury evidence that personal annoyance and inconvenience did result from the act of the party to all persons who came to reside in the house — the plaintiff, the members of *Page 251 
his family and all others. This is the mode of proving the injury alleged, that the house was so filled, by the act of the party, with noisome smells, and affected by noises to such a degree, that life there was rendered uncomfortable. If this could not be done, it would result that annoyances may be so multiplied in the dwelling house as to exclude the owner and his family from it, and render it useless as a habitation, and yet no damages be recovered.
We have looked through the evidence in this case, and whatever opinion we may have formed had the evidence been submitted to us, we do not see from it, that a verdict in favor of the plaintiff might not well enough have been rendered by the jury without imputing to them passion or prejudice, or any disposition to act in disregard of the evidence, and we do not feel warranted in disturbing it from any consideration that it is for the plaintiff rather than for the defendant.
Another ground assigned for new trial is, that the court rejected evidence offered by the defendant for the purpose of showing that other stables, similarly situated, did not create such annoyances. It does not seem to us necessary to do more than state the point. The admission of such evidence would be of evidence opening other issues than the one made in this case. It would raise an issue as to every stable to which such evidence relates, whether it was a nuisance to the neighborhood in which it was located — not to this; and would leave the issue here the same, — did this stable in fact annoy this neighborhood? If it did, it would be none the less a nuisance that other stables did not annoy the neighborhood in which they were. *Page 252