GUSTAV BLOMEN, *et al. vs.* N. BARSTOW COMPANY.
CARIN FREDERICKSON *vs.* N. BARSTOW COMPANY.

FEBRUARY 20, 1913.

PRESENT:   Johnson, C. J., Parkhurst, and Sweetland, JJ.

*(1)   Appeal and Error.   Equity.*

In an equity appeal, the findings of the trial judge upon the facts are entitled to great weight.

*(2)   Nuisance.*

Complainants having houses situated in a residential district are entitled to enjoin  the operation of drop hammers by a manufacturer, who has erected a factory near their dwellings where such operation constitutes a nuisance, causing great vibration, jarring and noise, and being necessarily injurious in its effect.

*(3)   Nuisance.*

While one may make a reasonable use of his property, no use of property is reasonable which results in a nuisance to others.

*(4)   Nuisance.*

Where the fact that respondent is causing a nuisance is established, the right of complainant to an injunction does not rest in the discretion of the court, is not affected by any possible detriment to the public, or by the fact that the damage resulting to the respondent would be disproportionate to the damage to complainant from the continuance of the nuisance.

*(5)   Nuisance.*

Every person is bound to use his property so as not to injure that of another or interfere with the reasonable and proper enjoyment thereof, and the carrying on of a business which through noisome smells or noxious vapors or by causing great and disturbing noises, jarrings or vibrations, affects injuriously property in the vicinity or renders the occupation thereof inconvenient and uncomfortable is a nuisance for which a person whose property is damaged or whose reasonable enjoyment of his estate as a place of residence is impaired or destroyed or whose health is injured, may maintain an action for compensation for the injury, and in such case equity will restrain the continuance of the nuisance by injunction.

BILLS IN EQUITY.   Heard on appeals of respondent and dismissed.

JOHNSON, C. J.   These two bills in equity are brought by the complainants to restrain the respondent from operating a drop or hammer, weighing 500 pounds, and from operating several smaller hammers, two of which weigh 250 pounds each, and a gas generator, used by the respondent in its business of manufacturing jewelry and contained in its large brick factory building, located on the corner of Public and Temple streets, in the city of Providence.

The complainant, Carin Frederickson, is the owner of a lot of land with a dwelling house thereon, situated on the easterly side of Temple street, a short distance south of Public street. The complainants, Blomen, are the owners of a lot of land with a dwelling-house thereon, situated on said easterly side of Temple street, and bounding northerly on said Frederickson land. These houses were built before the respondent purchased the land, immediately north of said Frederickson land, and erected a jewelry shop thereon. In the Temple street end of this factory, respondent erected five drop hammers, weighing respectively 500 pounds, 250 pounds, 100

pounds, and two, 50 pounds, each. All of these drop hammers are located just northerly of the Frederickson house.

The bills allege that the operation of said drops or hammers cause noise and vibration which destroy the comfortable enjoyment of the property of said complainants.

These allegations are denied by the respondent, which admits that a slight noise and jar of the complainants' property is caused by the operation of the 500-pound hammer, but denies that the noise and jar so caused is excessive or so great as to destroy or seriously impair the comfortable enjoyment of the complainants' property.

The respondent also denies that the operation of the small hammers and of the gas generator causes any disturbing noise or any perceptible jar of the complainants' property.

The causes were heard together by the Presiding Justice of the Superior Court. The evidence showed that from September, 1911, until Christmas, 1911, the factory and these hammers were operated until 9 o'clock in the evening. Since that time, the factory has been running in the daytime only. When the 500-pound hammer is in operation, it drops about two or three times a minute, from a height of 2 feet, 8 or 9 inches.

Complainants' witnesses testified that the operation of the 500-pound hammer jarred the Frederickson and Blomen houses. Mrs. Frederickson says it jars the house, it is a severe shake; Mr. Thomasson, one of Mrs. Frederickson's tenants, says he feels a perceptible jar to the premises; George E. Smith, another of Mrs. Frederickson's tenants, says it makes the whole place tremble and vibrate; Mr. Anderson, one of Mr. Blomen's tenants, says there is a steady jar and shock; Mrs. Anderson, his wife, says there is a jarring of the house every time the hammer strikes; Mr. Lanigan, another of Mr. Blomen's tenants, says it shakes and vibrates and jars the house; Mrs. Lanigan, his wife, says it jars the house. These witnesses testify that this jarring and vibration is heavy enough to rattle the dishes; to swing a door open; to move a flat-iron on a shelf; to rattle the

windows; and to shake a paper when reading.  The com-
plainants had other witnesses who did not testify, it being
admitted by respondent's counsel that they would testify
substantially the same in regard to the concussion.

George E. Smith, one of Mrs. Frederickson's tenants,
says it is so bothersome and disturbing there that he has
made up his mind to leave just as soon as he can.  Mr.
Thomasson, another of Mrs. Frederickson's tenants, says
his tenement is not so desirable as it was and that he is
going to get out of there as soon as he gets straightened out,
unless the thing is stopped.  Mrs. Anderson, who lives in the
Blomen house, says that owing to the disturbance and vibra-
tion from respondent's factory she and her husband are
going to move just as soon as they can find a house.  John F.
O'Rourke, one of *respondent's* witnesses, says he is in the
real estate business and that the factory has depreciated the
value of Mrs. Frederickson's house to the extent of $1,500.

The respondent's witnesses testify that a slight vibration
could be felt in the Frederickson yard; that there was a jar
or jolt in the Frederickson yard; and slight vibration and
concussion in the Blomen yard just south of the former, and
farther away from the factory; that a tremor of the ground
could be slightly felt in the third yard; and that a very
slight vibration could be felt at 239 Public street.

The court took a view of the premises and after hearing
further testimony announced his decision wherein he says he
would not grant the preliminary injunction if he had not a
very clear opinion of the case; that he is satisfied the heavy
drop is something unendurable to the people in the immediate
vicinity; that the vibration and noise are very great, very
disturbing, startling, jarring, not only extremely uncom-
fortable, but necessarily injurious to the nervous system
of the people who are near enough to it; that as to the
Frederickson and Blomen houses, he is of the very clear
opinion that the noise is unendurable and that the pre-
liminary injunction ought to be granted.  At the request of
counsel for respondent, the court consented to modify the

decrees so as to allow respondent to use the 500-pound hammer for four hours a day; but the court wished it to be understood that he did not intend the modification to be permanent; that he made the modification simply during the pendency of the appeal; and that in his opinion the 500-pound hammer should be stopped entirely.

Decree for a preliminary injunction were entered in each case, as advised by the court, temporarily restraining the respondent from further operating said 500-pound hammer, but with the modification, that during the pendency of this appeal, the respondent might operate the 500-pound drop, but only for four hours a day.

The respondent appealed from these decrees and filed the same reasons of appeal in each case.

These reasons of appeal are as follows:

First: That said decree is against the evidence and the weight thereof.

Second: That said decree is against the law.

Third: That said decree is against the rights of the respondent as disclosed by the pleadings and proved.

Fourth: That said court erred in finding and decreeing that the operation of said power drop or hammer as operated by the respondent is a nuisance.

Fifth: That said court erred in finding that said decree should be without any modification and absolute.

(1) The findings of fact by the trial judge are entitled to great weight. He heard and saw the witnesses on the stand and besides he took a view of the premises when the 500-pound drop was in operation and personally observed its effect upon the houses of the complainants. From our examination of the evidence we are satisfied that his findings of fact are justified.

It remains therefore to consider whether his application of the law to the facts as found was correct. If the injury complained of amounts to a nuisance, and a continuing one, the appropriate remedy is by a bill for an injunction. In *Tipping* v. *St. Helen's Smelling Co.*, 4 Best & S. 608, the

principle was largely discussed, and the judgment at *nisi prius* and in banc was affirmed in the Exchequer Chamber, 4 Best & S. 615, and upon appeal, by the House of Lords, 11 H. L. Cas. 642. That was an action for an injury to the plaintiff's dwelling-house, caused by noxious vapors proceeding from defendant's smelting works. The judge, at *nisi prius*, laid down the law thus,—"That in an action for nuisance to property by noxious vapors arising from the land of another, the injury, to be actionable, must be such as visibly to diminish the value of the property, and the comfort and enjoyment of it."

In *Crump* v. *Lambert*, L. R. 3 Eq. Cas. 409, Lord Romilly said: "With respect to the question of law, I consider it to be established by numerous decisions that smoke, unaccompanied with noise or noxious vapor, that *noise* alone, that offensive vapors alone, although not injurious to health, may severally constitute a nuisance to the owner of neighboring or adjoining property. That if they do so, substantial damages may be recovered at law, and that this court, if applied to, will restrain the continuance of the nuisance by injunction in all cases where substantial damages could be recovered at law." In that case, the injury resulted from a combination of smoke, noxious vapors and noise, which proceeded from the defendant's works adjoining the plaintiff's houses, where he carried on the business of manufacturing iron bedsteads. Other cases in the same line are *Elliotson* v. *Feetham*, 2 Bing. (N. C.) 134; *Soltau* v. *De Held*, 2 Sim. (N. S.) 133; *Inchbald* v. *Barrington*, L. R. 4 Ch. App. 388; *Ball* v. *Ray*, L. R. 8 Ch. App. 467.

In *Fish* v. *Dodge*, 4 Denio, 311, which was for a nuisance by noise and dust from a steam-boiler factory adjoining the plaintiff's dwelling-house, the Supreme Court of New York by Bronson, C. J., says: (p. 316) "It is a rule of the common law that a man should so use his own as not to hurt another; and therefore if one carry on a lawful trade or business in such a manner as to prove a nuisance to his neighbor, he must answer in damages." . . . "It is not

necessary to a right of action that the owner should have been driven from his dwelling: it is enough that the enjoyment of life and property has been rendered uncomfortable." . . . "Although the manufacturing of steam engine boilers is a lawful business, it was carried on in such a manner in this case as to make it a great annoyance to the plaintiff; and she is undoubtedly entitled to redress by action."

In *McKeon* v. *See*, 51 N. Y. 300, the action was for both damages and an injunction under the New York code, and the trial judge found that the action of the defendant's machinery, used to saw marble, produced a jarring and shaking of complainant's two houses, injuring the same and amounting to a nuisance (the degree of vibration was not stated), and gave judgment for $967—apparently for loss of rent—with an award of an injunction. The general term of the Supreme Court struck out the judgment for damages, but made the injunction perpetual. The court of appeals affirmed this judgment.

*Campbell* v. *Seaman*, 63 N. Y. 568, was an action for a nuisance resulting from a process used by the defendant in burning bricks upon his land, by which noxious gases were generated which borne by the winds upon the adjacent lands of his neighbor injured and destroyed his trees and vegetation. Earl, J., at page 576, said: "It is a general rule that every person may exercise exclusive dominion over his own property, and subject it to such uses as will best subserve his private interests. Generally, no other person can say how he shall use or what he shall do with his property. But this general right of property has its exceptions and qualifications. *Sic utere tuo ut alienum non laedas* is an old maxim which has a broad application. It does not mean that one must never use his own so as to do any injury to his neighbor or his property. Such a rule could not be enforced in civilized society. Persons living in organized communities must suffer some damage, annoyance and inconvenience from each other. For these they are compensated by all the advantages of civilized society. If one lives in the city he

must expect to suffer the dirt, smoke, noisome odors, noise and confusion incident to city life."  . . .

"But every person is bound to make a reasonable use of his property so as to occasion no unnecessary damage or annoyance to his neighbor.  If he make an unreasonable, unwarrantable or unlawful use of it, so as to produce material annoyance, inconvenience, discomfort or hurt to his neighbor, he will be guilty of a nuisance to his neighbor.  And the law will hold him responsible for the consequent damage.  As to what is a reasonable use of one's own property cannot be defined by any certain general rules, but must depend upon the circumstances of each case.  A use of property in one locality and under some circumstances may be lawful and reasonable, which, under other circumstances, would be unlawful, unreasonable and a nuisance.  To constitute a nuisance, the use must be such as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment specially uncomfortable or inconvenient."

The principle is also sustained by the Supreme Judicial Court of Massachusetts in *Wesson* v. *Washburn Iron Co.*, 13 Allen, 95; and by the Supreme Court of Maine in *Barnes* v. *Hathorn*, 54 Me. 124.  In *Davidson* v. *Isham*, 1 Stockt. 189, Chancellor Williamson held that "it is not necessary that the smell should be unwholesome, it is enough that it renders the enjoyment of life and property uncomfortable," and again:  "The authorities are abundant to sustain the position that an individual cannot erect in a densely settled portion of a city or town, occupied by private dwellings, any kind of manufacturing establishments, and so use the machinery and carry on the business as to render living in the neighborhood uncomfortable, either on account of the noise it occasions, or of its smoke and offensive smells."

In *Ross* v. *Butler*, 19 N. J. Eq. 294, Chancellor Zabriskie, p. 298, says:  "The first question is, whether the large volume of dense smoke, issuing from this factory upon the premises, and penetrating the dwellings of the complainants,

is such a nuisance as will be restrained by this court. The business is a lawful one; there can be no pretence that it is injurious to health; and it is a question of great practical importance in this state, where manufactures flourish, and are on the increase, whether such business can be permitted in the neighborhood of dwelling-houses, where the smoke and cinders render the houses uncomfortable to the inhabitants. Smoke, noise, or bad odors, even when not injurious to health, may render a dwelling very uncomfortable, so as to drive from it any one not compelled by poverty to remain. If the citizen has no protection against such annoyances, the comfort and value of his home can be destroyed by any one that may choose to erect such annoyance near it, and no one, not rich enough to buy all the land around him from which he could be so annoyed, could be safe.

"The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over refined person. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business, carried on in his vicinity. The maxim, *sic utere tuo ut alienum non laedas*, expresses the well established doctrine of the law."

In *Hennessy* v. *Carmony*, 50 N. J. Eq. 616, decided in 1892, the facts were quite similar to the facts in the case at bar. That was a bill for an injunction to restrain the jarring and shaking of complainant's house caused by the operation of two centrifugal machines or "whizzers," immediately in the rear of complainant's land. The injunction was granted. Pitney, V. C., says (p. 630); "The result of a careful review of the evidence upon my mind is to lead me to the conclusion that the degree of injury is such as to entitle the complainant to damages in an action at law, with the result that he is entitled to an injunction in this court. The injury, to be actionable, must be sensible and

appreciable, as distinguished from one merely fanciful, and in a case like this I assume, for present purposes, that it must have the effect of rendering the premises less desirable, and so less valuable for ordinary use and occupation. Now, it seems to me that a vibration that causes the windows and doors of a house to rattle in their casings, and dishes on the shelves to rattle and move on one another, and the walls to crack, and is distinctly felt by persons in the house, would have such effect, and is therefore actionable."

In *Hurlbut* v. *McKone*, 55 Conn. 31, there was a vibration of the same character and degree, as near as may be, as that shown in this case—the windows rattled in the casings, dishes and other like things standing on the table or shelves shook and jolted together. There was, however, in that case, an additional element of dense smoke and there was proof that the health of the plaintiff and his family had been injured. The court gave judgment for the plaintiff and assessed damages, but in view of a change made by the defendants in the mode of operating their works held that an injunction was not necessary. The judgment was affirmed.

In *Dittman* v. *Repp*, 50 Md. 516, the court says (p. 523): "Here, superadded to the mere noise made by the operation of the machinery, it is alleged that the working of the engine or pump produces strong vibratory and jarring motions, which shake the complainant's house, and render it unfit and unsafe for habitation. Such state of things, if true, clearly amount to a nuisance, such as will give a right of action at law or a court of equity will restrain. *Scott* v. *Firth*, 4 Fost. & Fin. 349. We shall therefore affirm the order granting the injunction."

Complainants' houses are not situated in a manufacturing neighborhood. There is no factory on Temple street, except that of the respondents, and no other factory in the immediate vicinity, except one owned by the Seamless Wire Company, which owns the land lying to the east of complainants' lands. But the Seamless Wire Company's *shop* is on

Eddy street. There are no drop hammers in the Seamless Wire Company's shop and that shop causes no inconvenience. The factory of the Metal Products Corporation is on Thurbers Avenue, which is quite a distance from complainants' houses. The most favorable view for the respondent of the testimony on this point is, not that complainants' houses are in a manufacturing neighborhood, but that within a radius of a quarter of a mile it is *becoming* a manufacturing neighborhood.

In *Ross* v. *Butler*, 19 N. J. Eq., *supra*, the language of Chancellor Zabriskie (at p. 305) is: "I find no authority that will warrant the position that the part of a town which is occupied by tradesmen and mechanics for residences and carrying on their trades and business, and which contains no elegant or costly dwellings, and is not inhabited by the wealthy and luxurious, is a proper and convenient place for carrying on business which renders the dwellings there uncomfortable to the owners and their families by offensive smells, smoke, cinders, or intolerable noises, even if the inhabitants are themselves artisans, who work at trades occasioning some degree of noise, smoke, and cinders. Some parts of a town may, by lapse of time, or prescription, by the continuance of a number of factories long enough to have a right as against every one, be so dedicated to smells, smoke, noise, and dust, that an additional factory, which adds a *little* to the common evil, would not be considered at law a nuisance, or be restrained in equity.

"There is no principle in law, or the reasons on which its rules are founded, which should give protection to the large comforts and enjoyments with which the wealthy and luxurious are surrounded, and fail to secure to the artisan and laborer, and their families, the fewer and more restricted comforts which they enjoy."

The respondent introduced some testimony to show that the foundation of the drops had been designed with a view to minimize the jar and vibration as much as possible. But the question here is a question of nuisance, not of negli-

(3) gence.   It is true the respondent may make a reasonable use of its property, but no use of its property is reasonable if it results in a nuisance to complainants.

In *Atty.-Gen.* v. *Cole & Son* (1901), 1 Ch. 205, which was an action to restrain a public nuisance, an injunction was granted against a fat melter who allowed noxious gases to escape from his premises.   Kekewich, J., in his opinion, p. 207, says:   "Mr. Cole erected this building some time ago to carry on a lawful trade, and he has been anxious to do everything he possibly could to prevent his trade from being an injury to his neighbors.   It is conducted in a perfectly decent and proper way.   From his point of view he is a reasonable man, but from the point of view which I have laid down, he is not acting reasonably if he commits a nuisance."

Respondent's counsel argue that the granting of an injunction in such cases is within the discretion of the court;
(4) and that it will not be granted where it will be inequitable between the parties or will work detriment to the public or will involve damage to the defendants engaged in a lawful business disproportionate to the damage to the complainant from the continuance of the alleged nuisance.

Such an argument was made in *Broadbent* v. *Imperial Gas Co.*, 7 De G. M. & G. 436.   The complaint was, that vegetables growing in the market-garden of the complainant were injured by the gas of that company, and the argument was pressed that this injury was slight in comparison with the benefits conferred by the company on the public, and that on that account the court would not exercise its power to restrain the manufacture of the gas.   Lord Cranworth, at p. 462, says:   "If it should turn out that the company had no right so to manufacture gas as to damage the plaintiff's market-garden, I have come to the conclusion that I cannot enter into any question of how far it might be convenient for the public that the gas manufacture should go on."   He further remarks, "but unless the company had such a right, I think the present is not a case in which this court can go into the question of convenience or inconvenience, and say,

where a party is substantially damaged, that he is only to be compensated by bringing an action *toties quoties*. That would be a disgraceful state of the law, and I quite agree with the vice-chancellor in holding that in such a case this court must issue an injunction, whatever may be the consequences with regard to the lighting of the parishes and districts which this company supplies with gas." This case was affirmed on appeal, (7 H. L. Cas.) 600.

In *Higgins* v. *Water Co.*, 9 Stew. Eq. 538, the court says: "If this water company is doing a legal wrong, injurious to the complainant, such wrongful conduct must, if persisted in, either now or hereafter, be restrained in equity. After the rights of these parties have been settled in this court, suits at law, founded in this diversion of this stream, would be mere assessments of damages. Judgments in such actions, as a matter of course, must pass in favor of the complainants. To be prohibited, therefore, from doing the wrongful act which must lead to such results, cannot be regarded, with respect to the defendant, as anything inequitable. Nor, under such circumstances, can a court of equity rightly withhold its hand on the ground of any supposed inconvenience to those who are the customers of this company."

In *Hennessy* v. *Carmony*, *supra*, Pitney, V. C., after citing the last mentioned case, said: "And I desire here for myself to say that I have never been able to see how the question of the right of the complainant to an injunction on final hearing could ever be a matter properly resting in the 'discretion' of the chancellor, as I understand the force of that word in that connection. If by 'discretion' is here meant that the judge must be discreet, and must act *with* discretion, and discriminate, and take into consideration and give weight to each circumstance in the case, in accordance with its actual value in a court of equity, then I say that that is just what he must do in every case that comes under his consideration—no more and no less." . . . "But if the word 'discretion' in this connection is used in its secondary sense, and by it is meant that the chancellor has the liberty

and power of acting, in finally settling property rights, *at* his discretion, without the restraint of the legal and equitable rules governing those rights, then I deny such power. It seems to me that the true scope of the exercise of this latter sort of discretion in the judicial field is found in those matters which affect procedure merely; and not the ultimate right."

(5) The rule of law is well settled that every person is bound to use his property so as not to injure that of another, or interfere with the reasonable and proper enjoyment thereof and that the carrying on of a business which creates noisome smells, or noxious vapors, or causes great and disturbing noises, jarring or vibrations, which affect injuriously property in the vicinity or render the occupation thereof inconvenient and uncomfortable, is a nuisance for which a person whose property is damaged or whose health is injured or whose reasonable enjoyment of his estate as a place of residence is impaired or destroyed thereby, may maintain an action to recover compensation for the injury, and that in such case a court of equity will restrain the continuance of the nuisance by injunction.

We are of the opinion that upon the allegations and the proof the preliminary injunction was in each case properly granted. In each case therefore, the appeal is dismissed, the decree below is affirmed, and the cause is remanded to the Superior Court for further proceedings.

*Thomas A. Carroll, Walter P. Suesman,* for complainants.
*Littlefield & Barrows,* for respondent.