MARGARET T. KENNEDY *vs.* OVILA W. FRECHETTE.

JANUARY 14, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*1. Equity. Nuisance. Injunctions.*

Under the principle that one is bound to use his property so as not to interfere with the reasonable and proper enjoyment of that of another and that the carrying on of any business which causes great and disturbing noises affecting

injuriously neighboring property is a nuisance entitling the injured party to relief in equity, the questions of the amount, intensity and duration of the noise and the effect thereof on the value of complainant's property and the impairment of the reasonable enjoyment of his residence, are questions of fact.

*2. Nuisance. Injunctions.*

Where the location was not a manufacturing one, the fact that a portion of one of the adjacent streets was used for stores, was no justification for the introduction of a noisy or otherwise offensive factory into the neighborhood.

*3. Nuisance. Injunctions.*

The amount of annoyance and inconvenience which may be caused to any individual in the use and enjoyment of his property through the growth and change of a city, without thereby creating a nuisance, is to be decided upon consideration of all the facts in any case.

*4. Nuisance. Injunctions.*

If the use by one of his property, causes a substantial diminution either in the value of adjacent property or in the enjoyment thereof, as measured by the degree of comfort which the average man living in such a neighborhood has a right to expect, it is a nuisance.

*5. Nuisance. Injunctions.*

The fact that time of operation of the instrumentality complained of, is limited, affects the extent of the injury but does not change the nature thereof.

*6. Nuisance. Injunctions.*

The fact that complainant resides upon a noisy street does not deprive her of the right to object to additional and different noises caused by respondent.

BILL IN EQUITY. Heard on appeal of complainant and sustained.

STEARNS, J. This is a bill in equity to enjoin the respondent from operating a factory on premises adjoining complainant's residence.

The factory is situated on the south side of Amy street in the city of Pawtucket; it adjoins a one storey building of respondent's situated on the corner of Amey street and Broadway, which extends to the south on Broadway approximately 100 feet, to a point within a few feet of the north line of the land of complainant. The land of the latter extends southerly along Broadway to the corner of Appleton avenue and thence westerly on Appleton avenue. Respondent

owns the north corner lot and complainant the south corner lot of the section, the easterly front of which is on Broadway; this street is a busy thoroughfare, 60 feet wide and on it are two street railway tracks. Complainant's house, which faces east and fronts on Broadway, is a two tenement wooden dwelling house; in the basement floor on Broadway there is a small barber shop. Complainant lives on the first floor, and leases to a tenant the second floor. .She has owned the property since 1915. Respondent has five small shops in his building on Broadway.

Respondent built the factory in the summer of 1922, to the west of his one story building. The factory which fronts on Amey street, is a two story wooden building, unsheathed and unplastered. The south wall, which is within a few feet of the north side of complainant's dwelling, is 23 feet high and is built of cement blocks without any opening therein. There are 27 windows on the west side of the factory and 13 windows on the second story of the east side. The east wall of the factory in the lower story is a partition wall between the factory and the stores.

The factory is used for the manufacture of tennis racquets, in which some thirteen workmen are now employed; when run to full capacity, some fifty or more will be employed. There are 24 machines which are operated by 23 electric motors. Included in this number are two circular wood saws, several wood planing machines and a blower used to carry the sawdust and waste wood to the boiler, which is used to produce heat for the factory.

The cause was heard on bill, answer and oral proof. The sole issue was whether the operation of the factory as conducted was a nuisance. After a hearing on the question of a preliminary injunction, the respondent was enjoined by a justice of the Superior Court from operating his factory as he had been doing, but was permitted to operate by the use of one planer for not more than two hours a day, a surface saw for not more than one hour a day and a circular saw for not more than three-quarters of a day. Thereafter the

cause was heard by another justice, on the application for a permanent injunction. By this justice, respondent was permanently enjoined from operating his two circular saws for more than two hours in any one day, from sawing and planing any stock in excess of 2 inches in thickness, and from operating his saws and planers after 5 o'clock in the afternoon and on Sundays. In the decree it was further ordered that during the operation of the saws and planers the windows on the west side of the lower floor of the factory should be kept closed, and that the two windows on the ground floor of the factory on the west side nearest complainant's house should be permanently closed.

The cause is here on the appeal of complainant from this final decree; the reasons of appeal are that the trial court erred in its finding of fact, and that the decree is against the law and the weight of the evidence.

The question is, does the operation of the factory as thus limited and restricted, now create a nuisance. The most substantial objection is to the noise. Although complaint is made of smoke from the factory chimney and of the vibration caused by the operation of the electric motors, the evidence is sufficient to sustain the finding of the Superior Court that the disturbance caused thereby is not so serious as to constitute a nuisance.

In *Blomen* v. *Barstow*, 35 R. I. 198 (1913) it was held to be an established rule of law, that every person is bound to use his property so as not to injure that of another, or to interfere with the reasonable and proper enjoyment thereof, and that the carrying on of any business which creates objectionable smells or causes great and disturbing noises or vibrations which affect injuriously neighboring property or render the occupation thereof uncomfortable, is a nuisance (1) for which a person whose property is damaged or whose health is injured or whose reasonable enjoyment of his residence is impaired or destroyed thereby, is entitled to relief in equity by injunction.

The authority of the Blomen case and the correctness of the rule of law as thus stated is not questioned. The questions of the amount, intensity and duration of the noise and the effect thereof on the value of complainant's property and the impairment of the reasonable enjoyment of her residence are questions of fact.

The testimony is somewhat conflicting and from the rescripts of the two justices it appears that there is some difference of opinion in regard to certain facts between the justices who heard the cause at different times. Each justice took a view of the premises, made observations of the effect of the operation of the factory, and the decision of each justice was influenced to a considerable extent by the result of his observations. At the first view, on the motion for a preliminary injunction, the justice arranged for the operation of one saw and a planer with the accompanying motors. From the interior of the Kennedy house when the windows therein were closed, the noise of the motors was heard but was not offensive. Upon opening the windows the noise of the motors was louder, the noise from the one saw and planer was slight. At this time the windows in the factory were closed, the wind was blowing away from the Kennedy house, but two of the machines in the factory were in operation and only small pieces of wood were being put through the saw and the planer. The court was of the opinion that, with the advent of warmer weather and the opening of windows in the house and factory, the noise from the saws and planers would be unendurable. A restricted operation was permitted until hearing on the final decree. At this latter hearing the justice who presided, in his rescript states that although in accord generally with the findings of fact previously made, he differed therefrom in this respect that he did not consider complainant's residence was located in a residential district; that to the west of complainant's house the neighborhood was unquestionably residential but that along Broadway, on which complainant's house fronts, he would call the region a

commercial one. The justice took a view in March and at that time the entire plant was started in operation. No marked vibration was felt in complainant's house. Complainant claims that at this view the plant was purposely run by respondent in a manner to make very little noise. The court while absent from the factory left a sheriff therein, to see that no change was made in the operations, and so far as was possible, to ensure a fair test of the effect of the operations.

Broadway is a noisy street; on it trolley cars pass every five minutes. Several hundred feet north of Amy street a steam railroad track crosses Broadway at grade, and at intervals during the day, freight trains are run over this track. Complainant says five or six times a day, respondent twelve or fifteen times. In addition there is the noise caused by numerous motor vehicles. The smoke of which complaint was made, was in the opinion of the court largely due to the operation of the freight trains.

In regard to the matter of noises, the court held there were only two which required serious consideration, namely, the operation of the two circular saws and the hum of the twenty-three motors used to operate the machinery. These motors are usually not all operating at the same time. When in operation, the court found there was a continuous subdued hum scarcely audible in complainant's house when the windows are closed and inaudible when trolley cars or heavy motor trucks were passing on Broadway. The noise in the opinion of the court largely came through the windows on the west side of the factory; with the windows open in the house, but closed in the factory, this noise is heard distinctly in complainant's pantry, less in her bathroom, and is scarcely noticeable in her bedroom. The court states "that certain unpleasant features are concomitants of city life in a busy section" and held with motors operating during ordinary hours and with respondent's windows closed, therefore the court would not enjoin the operation of these motors; also that the noise from the surface planer and

blower was not at the time of a character to warrant inter-ference; that when large stock was used considerable noise probably would emanate from both blower and planer, but with the small size stock used in the manufacture of tennis racquets the noise is not offensive and is of such a character that after a short experience a person of ordinary suscepti-bility would become accustomed to it and would thereafter fail to notice it.

The court then says, "the one noise we feel to which the complainant may properly object is that of the circular saws. Their sing is clearly discernible—we need not add that it is a harsh and jarring noise to one of normal nerves. It will be worse when complainant's windows are open in the summer." The court decided that as the operation of the saws for two hours each day was more than was nec-essary, at the time of the hearing, to keep the work going in the factory their use beyond two hours a day would be enjoined, and that during operation the windows of the factory on the ground floor on the west side should be kept closed, and no operation should be allowed except between 7 a. m. and 5 p. m. week-days. From this review of the record, certain facts emerge which are decisive of the issue.

The location is always an important consideration in the determination of the existence of a nuisance. It is clear that the location in question is *not* a manufacturing one. The use of the frontage on Broadway for commerce is no justification for the introduction of a noisy or otherwise offensive factory into the neighborhood. Except for the stores on Broadway, the entire section west of Broadway, both on Amey street and Appleton avenue, is exclusively a residential section in which the houses although not expen-sive are comfortable and well maintained. East of Broad-way the nearest factory is approximately one-quarter of a mile distant. Respondent now seeks to change the char-acter of this section west of Broadway by the establishment of a factory therein. Anyone living in a city must put up with the usual and ordinary noises of city life; in this

vicinity also with any of the usual results incidental to the use of the shops on Broadway. Certain additional annoyance and inconvenience often is inevitable as the city grows and changes, but the amount thereof which may be caused by any individual without thereby creating a nuisance is to be decided upon consideration of all the facts in any given case. Is the use of the property in the particular location reasonable or unreasonable, considering not only the rights of the owner, but also those of his neighbor. If such use causes a substantial diminution either in the value of adjacent property, or in the enjoyment thereof as measured by the degree of comfort which the average man living in such a neighborhood has a right to expect, it may properly be held to be unreasonable and hence a nuisance.

The operation of this factory has diminished the value of complainant's land. The operation of the circular saws two hours daily deprives complainant for that length of time of the comfortable and reasonable enjoyment of her home and results in an unwarranted and illegal disturbance of her rights. That the time of operation is limited, affects the extent of the injury but does not change the nature thereof.

In *Aldrich* v. *Howard*, 8 R. I. 246, objection was made to the establishment of a livery stable on land adjoining the plaintiff's residence. It was held that it was not necessary to entitle plaintiff to relief, that he should be driven from his residence; it was sufficient that the injury was such as to render the enjoyment of life therein uncomfortable.

The injury to complainant is real and substantial. It is no answer to her objection to say that, either from choice or necessity, she lives on a street which is very noisy. This fact does not deprive her of the right to object to additional and different noises caused by the respondent.

By establishing his factory in its present location respondent has taken the chance of being permitted to operate therein. It may be possible for respondent to do the necessary wood sawing and planing in some other location. He

can not, however, be permitted to carry on this part of his business, which is clearly a nuisance, in the present location.

Complainant is entitled to an injunction restraining the respondent from operating the circular saws and wood planing machinery. The appeal is sustained.

The parties may present a form of decree for allowance on January 21, 1924. Such decree shall also provide that complainant may hereafter apply to the Superior Court in this cause for an enlargement of the decree upon proof that the operation of the factory as thus limited is a nuisance.

*Thomas L. Carty*, for complainant.
*James E. Brennan*, for respondent.